I,SULLIVAN, Judge.
Kmart Corporation appeals a judgment rendered by the trial court in favor of Gaylynn Bellot. Ms. Bellot slipped and fell in a clear liquid on the floor in the Super Kmart store in Lafayette, Louisiana, injuring her right hip. After a trial on the merits, the trial court awarded her $30,000.00 in general damages and $9,837.29 in medical expenses. For the following reasons, we affirm the judgment of the trial court.
FACTS
On January 25, 1995, Gaylynn Bellot went to Super Kmart with her son, Hunter Bellot, her sister, Bonnie Uhler, and her sister’s friend, Howard Parker. While there, the party went to the Little Caesar’s restaurant located within the store. Upon entering the restaurant, they proceeded to the serving line where they ordered and paid for their food. Then, they went to sit at a table while their food was prepared. In the restaurant, there was a Lego table for children to play on. Hunter left the party’s table and went to play at the Lego *26 table. After about five minutes, Ms. Bellot went to get Hunter and bring him back to the table. As she started toward him, he headed toward the area of the cashier on the serving line, then went down the serving line. Ms. Bellot caught up with him, picked him up, and headed back toward the table. When she turned from the serving line toward the table, she slipped and fell to the floor, landing on her right hip. Ms. Uhler assisted Ms. Bellot and Hunter up off of the floor. After her fall, Ms. Bellot noticed a clear liquid on the floor that was sixteen to seventeen inches in diameter. There were two trash cans to the right of where she had slipped.
1 ¡¡.Howard Parker testified that when their party entered the restaurant there were two to four other patrons. There were employees behind the serving counter but none in the dining area. Further, he testified that there were no patrons in front of them in the serving line and that no patrons went through the serving line after they were in the restaurant. According to Mr. Parker, they were in the restaurant fifteen to twenty minutes before Ms. Bellot slipped.
Ms. Uhler also testified that they were in the restaurant fifteen to twenty minutes before Ms. Bellot slipped. She testified that there were four to six people in the dining area when they entered the restaurant. During the time they were in the restaurant, she did not see anyone go to the trash cans where Ms. Bellot slipped. According to Ms. Uhler, the spill was on the floor as long as they were in the restaurant, and no one passed in front of the trash cans while they were there.
Ms. Uhler went to assist Ms. Bellot and Hunter when Ms. Bellot slipped. After she got them to the table, she got napkins to blot the spill. She testified that the liquid was in front of one trash can only; it was clear; there were no straws, no ice, and no cups in or around the liquid; the liquid appeared to be under the trash can also. She was of the impression that the liquid was a leak from the trash can. After blotting the liquid, Ms. Uhler notified the cashier of the liquid and that Ms. Bellot had slipped. No one with Kmart checked on Ms. Bellot or the liquid on the floor until fifteen to twenty minutes after Ms. Uhler reported the matter to the cashier. At that time, the cashier checked on Ms. Bellot and the cook cleaned the floor.
Kmart did not have any record of its employees who worked in the restaurant on January 25, 1995. Danny Santiere, the store manager, testified that, ideally, once an employee was put on notice of a spill, it should be cleaned within a minute or two. |3According to Mr. Santiere, the store’s policy calls for blocking the spill and putting down cones. Further,! he testified that fifteen minutes was too long for the spill not to be cleaned and that it was a violation of store policy for the restaurant employees not to report the accident. Three employees of the restaurant testified and established that Kmart’s cleaning policies and procedures for the restaurant were not uniform, and that they did not uniformly perform cleaning procedures. The testimony of all of the witnesses established that the cashier had a clear view of the area where the spill was located.
Kmart appeals, assigning as error the trial court’s conclusion that Ms. Bellot proved that it had constructive notice of the spill before she slipped.
STANDARD OF REVIEW
A trial court’s findings of fact may not be reversed absent manifest error or unless it is clearly wrong. Stobart v. State of Louisiana, through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993). Evaluations of credibility and reasonable inferences of fact should not be disturbed on review. When reviewing the trial court’s findings of fact, the appellate court must review the entire record to determine whether the trial court’s conclusion was a reasonable one. Id. If the trial court’s findings are “reasonable in light of the record reviewed in its entirety, the court of *27 appeal may not reverse, even if convinced that had it been sitting as the trier -of fact, it would have weighed the evidence differently.” Id. at 882-83, quoting Housley v. Cerise, 579 So.2d 973, 976 (La.1991).
CLAW AND ARGUMENT

La.R.S. 9:2800.6

Under La.R.S. 9:2800.6(B), Ms. Bellot had to prove that Kmart created or had actual or constructive notice of a condition that caused damage to her. There was no evidence that a Kmart employee created the spill. Constructive notice is defined by La.R.S. 9:2800.6(0(1):
“Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
The Louisiana Supreme Court addressed the constructive notice requirement in White v. Wal-Mart Stores, Inc., 97-393, p. 4-5 (La.9/9/97); 699 So.2d 1081, 1084-85, stating:
Constructive notice ... is defined ... [to include a mandatory] temporal element. ... The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall....
Though there is no bright line time period, a claimant must show that “the condition existed for such a period of time ...” Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
[[Image here]]
|sThe statute is clear. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care.
Thus, a plaintiff must present positive proof that a “condition” existed for such a period of time that the merchant would have discovered it if ordinary care was exercised by the merchant. The testimony of Ms. Bellot and her witnesses is evidence that the liquid was on the floor for at least fifteen to twenty minutes before her fall. During that time, no patrons or employees who could have created the spill were in the area of the liquid. Furthermore, the evidence indicates that the liquid actually leaked from a trash can that Kmart provided for the discard of drinks and other refuse from the tables.
We find no error with the trial court’s conclusion that Kmart had constructive notice of the liquid in which Ms. Bellot slipped and that it failed to exercise reasonable care in light of the time that the liquid was on the floor before Ms. Bellot slipped. The judgment of the trial court is affirmed. All costs are assessed to Kmart Corporation.
AFFIRMED.